IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


**CARLON McGINN,**

            **Plaintiff,**

    **v.**                                   **CASE NO.  06-3315-SAC**

**RAY ROBERTS, WARDEN,**
**et al.,**

            **Defendants.**

### MEMORANDUM AND ORDER

This is a civil rights complaint, 42 U.S.C. 1983, filed by an inmate of the El Dorado Correctional Facility, El Dorado, Kansas (ECF). Named as defendants are Warden Roberts at ECF, two officials at the Kansas Department of Corrections, and "John Does, to be named" who are ECF staff members alleged to have been involved in or to have failed to prevent the alleged violation of plaintiff's constitutional rights. Plaintiff also cites "joinder of" K.S.A. 21-3425, mistreatment of a confined person[1].

As grounds for his complaint, Mr. McGinn alleges that Warden Roberts is refusing to allow him visitation with his significant other, common law wife, without just cause and contrary to rules on visitation. He also alleges the denial of visitation is hurting his relationship with his fiance/wife and causing him pain and suffering. He asserts violation of his federal constitutional rights to association, to equal protection of the laws under the 14th Amendment, and of his right to be free of cruel and unusual punishment. Plaintiff seeks money damages and "restoration of

---

[1] Plaintiff is not entitled to relief under 42 U.S.C. 1983 for violations of a state statute or prison regulations.

visitation with spouse."

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

A threshold issue is whether or not plaintiff has exhausted administrative remedies on his claims. Plaintiff alleges that he has, and exhibits a grievance filed by him dated June 9, 2006, in which he complained that his girlfriend was not being allowed to visit him. He stated Tammy Rose Sullivan had been approved to visit another inmate, his brother David Rose, but was unfairly not being allowed to visit him. Initially, visitation was disallowed because she was on another inmate's visiting list. Plaintiff stated his brother is no longer an inmate; Ms. Sullivan wants to visit him; she removed her name from his brother's list on December 27, 2005; and they were told they had to wait 180 days before she could be placed on another inmate's visitor list. The 180 days passed, and Ms. Sullivan applied but was denied based upon her conviction of a narcotics offense. Plaintiff stated in his grievance that she had the same conviction when she was approved to visit his brother at Lansing and Ellsworth. He asked that she be approved to visit him.

The Unit Team responded on June 13, 2006, that Ms. Sullivan was denied visiting privileges with him pursuant to KAR 44-7-104, and she could contact "the I & I department to discuss this issue further." Another of plaintiff's exhibits indicates Ms. Sullivan was denied visitation privileges "in accordance with K.A.R. 44-7-104(3)(E), involvement or convicted of a narcotic offense." Plaintiff appealed the Unit Team response, and the Warden's response to the appeal dated June 19, 2006, is exhibited in which he concurred in the Unit Team Manager's response finding it reasonable.

2

A letter plaintiff wrote to the Secretary of Corrections office on June 19, 2006, was responded to by William Cummings that visitation by ex-inmates was prohibited unless approved by the warden. On July 3, 2006, plaintiff appealed his grievance to the Secretary of Corrections, who denied relief on July 14, 2006, but recommended "that the prospective visitor contact I & I." Plaintiff also exhibits a letter dated September 11, 2006, he received from CSIII Dale R. Call in response to information he had sent seeking Ms. Sullivan's placement on his visitation list. Mr. Call noted in the letter that the initial requests to place Ms. Sullivan on plaintiff's list were submitted during the 180-day delay, and advised Ms. Sullivan could now reapply and "they would review her application." Mr. Call advised plaintiff that the Warden "would have the final say" regarding her visitation at ECF, because of her prior criminal record.

The court makes a tentative finding that plaintiff has exhausted his administrative remedies on his claims, even though some responses seem to suggest his administrative claims were premature.

**FILING FEE**

With regard to another preliminary matter, plaintiff has filed an Application to Proceed Without Prepayment of Fees (Doc. 2). However, he has not complied with the statutory requirement that he submit "a certified copy of the trust fund account statement for the prisoner for the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. 1915(a)((2). Instead, he asks the court to "place an attachment" on the $100.11 in his inmate "savings"

3

account and order monthly payments of $10 on the balance of the filing fee and costs. The court will not require payment from the inmate's mandatory savings account. Plaintiff will be given 20 (twenty) days to satisfy the filing fee by either paying the filing fee of $350 in full or submitting a certified statement of his inmate account in support of his motion for leave to proceed without prepayment of fees (Doc. 2).

**SCREENING**

Because Mr. McGinn is a prisoner, the court is required by statute to screen his complaint and to dismiss the complaint or any portion thereof that is frivolous, fails to state a claim on which relief may be granted, or seeks relief from a defendant immune from such relief. 28 U.S.C. 1915A(a) and (b). Having screened all materials filed, the court finds the complaint is subject to being dismissed for failure to state a claim.

Decisions regarding visitation, particularly with regard to a desired visitor who has been convicted of a drug offense, are within the discretion of prison authorities. Plaintiff has not alleged a constitutional claim of denial of right of association because the regulation governing visitation by persons convicted of drug offenses "bears a rational relation to legitimate penological interests," and he has not shown he has no alternative means of association with his wife/fiance. <u>Overton v. Bazzetta</u>, 539 U.S. 126, 132, 134-135 (2003). Nor has plaintiff stated a claim of denial of equal protection, since he has not alleged that the administration's denial of his request for this visitor is based upon racial or other illegal discrimination. Moreover, the

restriction on plaintiff's visitation may make his confinement more difficult to bear, but it is not shown to "fall below the standards mandated by the Eighth Amendment." Id. at 136. Plaintiff is given time to allege additional facts or authority, which would support a claim of constitutional violation.

If plaintiff fails to respond to this Memorandum and Order within the allotted time, this action may be dismissed without further notice.

**MOTION FOR SERVICE OF SUMMONS**

Plaintiff has also filed a Motion for Service of Summons (Doc. 3). This motion is denied without prejudice at this time, because service of summons will not be ordered until the screening process is complete and the filing fee has been satisfied.

**IT IS THEREFORE ORDERED** that plaintiff's Motion for Service of Summons (Doc. 3) is denied, without prejudice.

**IT IS FURTHER ORDERED** that plaintiff is granted twenty (20) days in which to satisfy the filing fee as directed herein, and to state a claim of a federal constitutional violation.

**IT IS SO ORDERED**.

Dated this 21st day of November, 2006, at Topeka, Kansas.


                                    s/Sam A. Crow
                                    U. S. Senior District Judge